UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:18-cr-00099-LRH-CLB |
| Plaintiff, | ORDER |
| v. | |
| DAVID RAMON COVARRUBIAS, | |
| Defendant. | |

The United States has filed a motion to preclude defendant David Ramon Covarrubias from asserting a derivative or acquired citizenship defense at trial. (ECF No. 41). Also pending before the Court are motions filed by Covarrubias requesting that the jury view an "unconscious bias juror video" (ECF No. 25) and to preclude the government from introducing documents under Federal Rule of Evidence 404(b) (ECF No. 37).

**I. Unconscious Bias Video**

Covarrubias has requested that the Court order all potential jurors to view an "unconscious bias" video prior to jury selection. (ECF No. 25). This video, which was produced several years ago by the Western District of Washington, is approximately eleven minutes long and, according to Covarrubias, "provides a well-balanced and professionally produced general introduction and discussion concerning unconscious bias." (*Id*. at 2). He claims that showing such a video is necessary because he "is Hispanic and it is unlikely that a cross-section of the jury pool will share his ethnic background." (*Id*.) The government objected to showing potential jurors this video on grounds that it is outdated and not reflective of the citizens of the District of Nevada. (ECF No. 36).

1

1	The Court will deny Covarrubias's motion. The Ninth Circuit model criminal jury instructions, which the Court intends to give and follow thorough voir dire questioning and trial, includes an instruction requiring that jurors not be influenced by any unconscious bias they may have. 9th Cir. Crim. Jury Instr. 1.1 (2019). The undersigned also regularly issues an instruction cautioning jurors to "not be influenced by any person's race, color, religion, national ancestry, or gender." (*See* ECF No. 173 at 1 in Case No. 3:18-cr-00049-LRH-CLB). The Court is confident that such measures are more than sufficient to prevent jurors from deciding Covarrubias's guilt or innocence based in any part on his race or national origin.

## II. Covarrubias's Motion in Limine to Preclude 404(b) Evidence

Covarrubias's second motion seeks to preclude the government from introducing eight documents into evidence, including Covarrubias's "prior Visa, the revocation of his Legal Permanent Resident (LPS) status, his birth certificate, his Freedom of Information Act request, his Detainee Request Form, his mother's Petition to Classify Status of Alien Resident, his Medical Examination of Applicants for Visas, his Pershing County Booking Report, and any other documents in his Alien File which designate his place of birth as Mexico." (ECF No. 37 at 3; ECF No. 31 at 1–2). Covarrubias complains that the government "mysteriously" did not agree to a stipulation of fact that he had proposed whereby he would admit that he was born in Mexico. (ECF No. 37 at 3). Covarrubias goes on to argue that there "is no relevance" to any of the documents that the government seeks to introduce and that even with appropriate redactions, they are all unduly prejudicial to him. (*Id.* at 3–4).

Federal Rule of Evidence 404(b) prohibits the government from introducing evidence of a defendant's crime, wrong, or other act to prove that in the current case, the defendant acted in accordance with his bad character. But the evidence may be admitted for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Evidence will be admitted unless it is irrelevant or another rule or federal law provides otherwise. *Crawford v. City of Bakersfield*, 994 F.3d 1070, 1077 (9th Cir. 2019); Fed. R. Evid. 402. Evidence is considered relevant when it tends to make any fact of consequence more or less probable. Fed. R. Evid. 401. As Covarrubias recognizes, the

2

government must prove his alienage beyond a reasonable doubt at trial. (ECF No. 37 at 3). He also recognizes the place of his birth is relevant to prove alienage. (*Id.*) The only issues, then, are (1) whether the government must agree to Covarrubias's stipulation that he was born in Mexico and (2) whether the introduction of redacted A-file documents are unduly prejudicial.

The answer to both questions is "no." The government is not required to agree to a stipulation of evidence and can instead prove its case by evidence of its own choice. *Old Chief v. U.S.*, 519 U.S. 172, 187 (1997). As the Supreme Court stated in *Old Chief*, a defendant "may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id*. at 187–88. The reasoning behind this rule is clear:

> [T]he accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.

*Id*. at 189. Covarrubias's argument that evidence somehow loses its relevancy when a defendant agrees to stipulate to the underlying facts is without merit.

Regarding undue prejudice, the government has already agreed to redact irrelevant and highly prejudicial information from the documents in Covarrubias's A-file, such as mentions of his criminal history or gang affiliation. (ECF No. 46 at 3). Covarrubias's assertion that A-file documents are inadmissible is undone by a wealth of Ninth Circuit caselaw allowing the admission of such documents. *See, e.g., U.S. v. Ruiz-Lopez*, 749 F.3d 1138, 1141–42 (9th Cir. 2014) (holding that there was sufficient evidence of defendant's alienage where the government introduced documents from his A-file, such as his Form I-213); *U.S. v. Hernandez*, 105 F.3d 1330, 1333 (9th Cir. 1997) (holding that there was sufficient evidence of defendant's alienage where the government introduced evidence that he scaled a border fence and produced documents from his prior deportation). In fact, in *Ruiz-Lopez*, the Ninth Circuit noted that "[s]o long as the documents in an A-file have been properly admitted in the criminal case, and the jury has been instructed as to the 'beyond a reasonable doubt' standard, which is higher than the standard required in a

1 deportation hearing, such documents may be considered by the jury and, depending on their contents, may constitute sufficient proof of alienage if the jury so concludes." 749 F.3d at 1142.

The Court accordingly finds that redacted documents from Covarrubias's A-file are admissible to prove his alienage.

### III. Government's Motion in Limine to Preclude a Derivative/Acquired Citizenship Defense

Next, the Court considers the government's motion to preclude Covarrubias from asserting a derivative or acquired citizenship defense at trial. (ECF No. 41). The United States argues that Covarrubias should be prevented from asserting such a defense because he has not provided any evidence that he meets the requirements of any one theory of derivative or acquired citizenship. (*Id*. at 7). In a §1326(c) trial, the government must prove the defendant's alienage, meaning that he is a citizen of another country and not an American citizen, beyond a reasonable doubt. *U.S. v. Barragan-Cepeda*, 29 F.3d 1378, 1380 (9th Cir. 1994). One way for a §1326(a) defendant to rebut the government's evidence concerning the alienage element is through a defense known as derivative or acquired citizenship.

The concept of derivative and acquired citizenship is complex, with many potential avenues for a defendant to prove that he is a citizen of the United States. Part of this complication stems from the operative statutes being amended, reorganized, and having parts ruled unconstitutional by the Supreme Court over the years. As an initial matter, the Court notes that the Child Citizenship Act ("CCA") does not apply to Covarrubias. The CCA only applies to individuals who were born after February 27, 2001, or who were under eighteen as of that date. *Hughes v. Ashcroft*, 255 F.3d 752, 760 (9th Cir. 2001). Covarrubias concedes that he was born in Mexico in 1977, so the question of whether he qualifies for derivative or acquired citizenship is governed under the former regulatory scheme. (ECF No. 48 at 2).

Covarrubias's briefing is largely nonresponsive to the government's motion. He does not identify the theory upon which his derivative or acquired citizenship defense is based, nor does he identify the evidence that he believes supports his theory. (ECF No. 48). Instead, Covarrubias accuses the government of making late filings and late disclosures (*Id*. at 4–5). He goes on to argue

4

that because he has the right to challenge any element of his charged offense, he must be allowed to present evidence related to a derivative citizenship defense. (*Id*. at 7–8).

Neither side in a criminal case has an unfettered right to introduce any evidence they wish at trial. And, in a §1326(c) case, the defendant does not have an unqualified right to introduce a derivative or acquired citizenship defense at trial. In *U.S. v. Espinoza-Baza*, the defendant attempted to introduce evidence through witness testimony that his maternal grandfather was born in the United States to show that he was an American citizen by way of derivative citizenship. 647 F.3d 1182, 1186 (9th Cir. 2011). After allowing the defendant to proffer evidence, the district court prohibited him from putting on a derivative citizenship defense because even if the jury believed every piece of his proposed evidence, it still would be legally insufficient to establish derivative citizenship. *Id*. at 1186–87.

On appeal, the Ninth Circuit upheld the district court's evidentiary rulings. The court noted that under Supreme Court precedent, the Federal Rules of Evidence give trial courts discretion to exclude evidence that is irrelevant, lacking in foundation, or has minimal probative value outweighed by other factors such as unfair prejudice, confusions of the issues, or potential to mislead the jury. *Id*. at 1188 (citing *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006)). While the Ninth Circuit noted that the defendant's proffered testimony was relevant to his derivative citizenship defense, it was not probative because he failed to produce any evidence that he met all the elements of a derivative citizenship defense. *Id*. at 1189. For example, the defendant did not provide any evidence that his grandfather had spent any significant time in the United States or that his mother had ever entered the United States prior to his birth. *Id*. at 1190. The district court properly excluded the evidence under Federal Rule of Evidence 403 because "if admitted, [it] would have created a substantial risk of confusion and that it might have caused the jury to base its verdict on highly speculative evidence rather than [the defendant]'s guilt or innocence." *Id*. The court concluded by stating that while criminal defendants do not face any burden regarding the issue of derivative citizenship, " 'well-established rules of evidence' can still trump that right when the probative value of the defendant's evidence 'is outweighed by certain other factors such as

unfair prejudice, confusion of the issues, or potential to mislead the jury.' " *Id*. at 1191 (quoting *Holmes*, 547 U.S. at 326.

The case law is clear – before the defense is allowed to present a derivative or acquired citizenship defense to a jury, it must make a proffer of evidence to the Court to demonstrate that its theory is legitimate. In *Espinoza-Baza*, the district court properly required the defendant to make a proffer of evidence prior to introducing a theory of derivative citizenship to the jury. 647 F.3d at 1186. Covarrubias cannot dispute that under binding Ninth Circuit authority, he is required to do the same. He has not provided the Court with any case decided after *Espinoza-Baza* that abrogates its central holding. Instead, he cites to *U.S. v. Sandoval-Gonzalez*, 642 F.3d 717, 724 (9th Cir. 2011), a case decided some months before *Espinoza-Baza*, for the proposition that he must be allowed to put on a derivative citizenship defense at trial. (ECF No. 48 at 8–9). Even if that case contained the law he claims it does, it was modified by the later *Espinoza-Baza*.

The Court will offer defense counsel an opportunity to make a proffer of evidence on the morning of trial. The burden placed upon them is low—all they must do is (1) identify which theory of derivative or acquired citizenship they believe Covarrubias qualifies for and (2) proffer documents or testimony that they believe show he meets the requirements of that theory. To be clear, the evidence proffered does not have to conclusively establish that Covarrubias is an American citizen. Instead, it must, at a minimum, consist of more than a "mere scintilla of evidence" that he can satisfy every element of his selected theory of derivative or acquired citizenship. *Espinoza-Baza*, 647 F.3d at 1191.

Defense counsel is under no obligation to proffer evidence at any time before or even at trial. But until they demonstrate to the Court that their derivative or acquired citizenship defense has some legitimacy, they will not be allowed to raise the issue before the jury. This includes references to derivative citizenship during opening arguments and on cross-examination of government witnesses. One of the main purposes of Federal Rule of Evidence 403 is to prevent litigants from introducing evidence that is designed to mislead or confuse the jury. The Ninth Circuit noted in *Espinoza-Baza* that introducing some evidence of derivative citizenship when the defendant cannot possibly meet all the elements of the defense creates "a substantial risk of

6

confusion" that could cause the jury to base its verdict on "highly speculative evidence." 647 F.3d 1182, 1190 (9th Cir. 2011). Unless Covarrubias has a legitimate derivative citizenship argument, there is no reason for him to make references to derivative citizenship to the jury or to introduce evidence only relevant to that issue. Without a legitimate derivative or acquired citizenship defense, such evidence substantially increases the likelihood that the jury will base its verdict on unfair prejudice. *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997) ("Unfair prejudice' within [Rule 403's] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

### IV. Conclusion

IT IS THEREFORE ORDERED that defendant David Ramon Covarrubias's motion to require jurors to view an "unconscious bias" video (ECF No. 25) is **DENIED**.

IT IS FURTHER ORDERED that Covarrubias's motion to preclude 404(b) evidence (ECF No. 37) is **DENIED**.

IT IS FURTHER ORDERED that the United States' motion to preclude a derivative or acquired citizenship defense (ECF No. 41) is **GRANTED IN PART** and **DENIED IN PART**.

IT IS SO ORDERED.

DATED this 11th day of March, 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE